**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PEGGY REEVES,                                    )        No. ED CV 05-587-PLA
                                                 )
                    Plaintiff,                   )
                                                 )        **MEMORANDUM OPINION AND ORDER**
          v.                                     )
                                                 )
JO ANNE B. BARNHART,                             )
COMMISSIONER OF SOCIAL                           )
SECURITY ADMINISTRATION,                         )
                                                 )
                    Defendant.                   )
_____  )

**I.**

**PROCEEDINGS**

         Plaintiff filed this action on July 14, 2005, seeking review of the Commissioner's denial of

her  application for Supplemental Security Income benefits[1].  The parties filed a Consent to

proceed before the undersigned Magistrate Judge on August 24, 2005.  Pursuant to the Court's

Order, the parties filed a Joint Stipulation on April 12, 2006, that addresses their positions

---

        [1]   Although plaintiff asserts in the Joint Stipulation that she filed a claim for "Social Security
Insurance" benefits (Joint Stipulation at 2), there is no evidence that she filed for, or that she
meets the insured status requirements of, Social Security Disability Insurance Benefits under Title
II of the Social Security Act. [AR at 12, 43-44, 46.]

concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on July 19, 1960. [See Administrative Record ("AR") at 43.]  She has a tenth grade education [AR at 54] and past relevant work as a health care giver and truck driver. [AR at 49, 91-94.]

On March 12, 2003, plaintiff protectively filed her  application for Supplemental Security Income benefits, alleging that she has been unable to work since May 15, 1999, due to post traumatic stress disorder ("PTSD"), depression, anxiety, degenerative osteophytes in the cervical spine, osteoarthritis in the shoulders, damaged nerves in the right arm, and a damaged back. [AR at 43-44, 45, 48.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 20-23, 27-30, 31.]  The hearing was held on December 14, 2004, at which time plaintiff appeared with counsel and testified on her  own behalf.  A vocational expert also testified.  [AR at 257-88.]

On February 28, 2005, the ALJ determined  that plaintiff was not disabled because she could perform a narrow range of light work.  [AR at 12-15.]  When the Appeals Council denied review on May 13, 2005 , the ALJ's decision became the final decision of the Commissioner. [AR at 5-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P,

3

1 Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the

2 claimant's impairment or combination of impairments does not meet or equal an impairment in

3 the Listing, the fourth step requires the Commissioner to determine whether the claimant has

4 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

5 and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform

6 past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

7 case of disability is established.  The Commissioner then bears the burden of establishing that

8 the claimant is not disabled, because she can perform other substantial gainful work available in

9 the national economy.  The determination of this issue comprises the fifth and final step in the

10 sequential analysis.  20 C.F.R. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

11 **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

12        In this case, the ALJ found that plaintiff "asserted she had not engaged in substantial

13 gainful activity since the alleged onset date" of disability.  The ALJ made no finding to the contrary.

14 [AR at 12, 15.]  At step two, the ALJ concluded that plaintiff has the severe impairments of

15 degenerative disc disease, anxiety, depression and post-traumatic stress disorder.  [AR at 12-13,

16 15.]  At step three, the ALJ found that the impairments do not meet or equal any impairments in

17 the Listings.  [AR at 13, 15.]  The ALJ further determined that plaintiff retains the residual

18 functional capacity[2] to perform light work[3] as defined in the Regulations "with no work at

19 unprotected heights, around dangerous unguarded moving machinery and no more than

20 occasional balancing, stooping, kneeling, crouching or crawling and no work requiring climbing."

21 He further found that plaintiff was "limited to work which is object oriented and is able to perform

22 work requiring no greater than occasional above the shoulder lifting bilaterally."  [AR at 13, 15.]

23 _____

24        [2]    Residual functional capacity ("RFC") is what a claimant can still do despite existing

25 exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.
1989).

26        [3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying

27 of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting most

28 of the time with some pushing and pulling of arm or leg controls. . . ."  20 C.F.R. § 416.967(b).

At step four, the ALJ concluded that plaintiff is unable to perform any of her past relevant work. [AR at 15.]  At step five, the ALJ concluded that there are a significant number of jobs in the national economy that plaintiff can perform. [AR at 14, 15.] Accordingly, the ALJ found plaintiff not disabled. [AR at 15.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends:

(1)   That the ALJ's step two finding is "vague and unintelligible";

(2)   That the ALJ failed to properly consider the opinions of the treating physicians;

(3)   That the ALJ failed to properly consider the opinion of the State Agency physician;

(4)   That the ALJ erred in not considering her "asthma" as a severe impairment; and

(5)   That the ALJ erred in failing to consider her "fibromyalgia" as a severe impairment.

After a review of the record, the Court concludes that the ALJ erred in failing to properly consider the opinions of plaintiff's treating physicians.  For the reasons explained below, this matter is remanded for further proceedings.

**A.     THE ALJ'S STEP TWO ANALYSIS**

Plaintiff in essence claims that the ALJ's step two analysis is vague because although he found a "severe" mental impairment, he did not ascribe any functional limitations to that impairment.

At step two, the ALJ must consider the combination of plaintiff's impairments, including those that individually might not be severe.  20 C.F.R. § 416.923 ("In determining whether [an individual's] physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, [the Commissioner] will consider the combined effect of all of [the] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").  Thus, the mere fact that

5

plaintiff's mental impairment is included in the step two determination of a severe impairment does not mean that plaintiff's mental impairment by itself has more than a minimal effect upon plaintiff's ability to perform basic work-related activities. 20 C.F.R. § 416.921 (A non-severe impairment is one which does not significantly limit an individual's ability to perform basic work-related activities.). However, as plaintiff correctly points out, in assessing plaintiff's residual functional capacity, even the limitations ascribed to a non-severe impairment, if any, must be considered. 20 C.F.R. § 416.945(a)(2)("[The Commissioner] will consider all of [an individual's] medically determinable impairments of which [she is] aware, including [the individual's] medically determinable impairments that are not 'severe.'"); 20 C.F.R. § 416.923 ("If [the Commissioner] find[s] a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.").

Contrary to plaintiff's contentions, however, the ALJ did not fail to ascribe any limitations to plaintiff's mental impairment. Rather, the ALJ indicated that plaintiff was limited to "object oriented" work. [AR at  13.]   Whether the ALJ is correct that this is the only mental limitation is another matter, discussed below.

**B.      THE ALJ'S CONSIDERATION OF THE STATE AGENCY PHYSICIANS' OPINIONS**

Plaintiff contends that the ALJ failed to properly explain the weight accorded to the State Agency psychiatrists in accordance with Social Security Ruling ("SSR") 96-6p.[4]  See also 20 C.F.R. § 416.927(f)(2)(ii). Specifically, plaintiff argues that the ALJ erred in failing to mention the State Agency psychiatrist's Psychiatric Review Technique Form [AR at 206-19], arguing that "[w]ith this functional capacity [i.e., moderate limitations "in all spheres of activities of daily living"], a vocational expert could testify that full time work is not sustainable." Joint Stipulation at 17. However, the Psychiatric Review Technique Form is not an assessment of residual functional capacity, but rather is a technique to evaluate the severity of plaintiff's impairment at steps two

---

[4]      Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

and three.  20 C.F.R. § 416.920a(d);  Maier v. Commissioner of the Social Security Administration, 154 F.3d 913, 914-15 (9th Cir. 1998).  Clearly, the ALJ agreed with the State Agency psychiatrist that plaintiff's mental impairment, at least in combination, was "severe" but that it did not meet an impairment in the Listing. [AR at 206.]

Plaintiff also assigns error in that the ALJ failed to explain the weight given to the Mental Residual Functional Capacity Assessment, although the ALJ referred to it in his decision. Joint Stipulation at 17; [see AR at 13; see AR at 202-04.] The State Agency psychiatrist concluded that plaintiff was capable of non-public, simple, repetitive tasks.[5] [AR at 204.]  The residual functional capacity found by the ALJ limited plaintiff to "object-oriented" unskilled work.[6]  Again, as the Commissioner argues, the ALJ agreed with the State Agency psychiatrist's opinion and accepted it.  Joint Stipulation at 17.  "Magic words" from the ALJ specifically rejecting a physician's opinion are not required, when inferences "are there to be drawn" from the ALJ's decision.  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

## C.   PLAINTIFF'S FIBROMYALGIA

Plaintiff argues that the ALJ's rejection of the diagnosis of fibromyalgia as being "unsupported by the objective medical evidence of record" [AR at 14]  was "intellectually dishonest" because fibromyalgia is not verifiable by "objective" evidence.  Joint Stipulation at 21. While it is true that fibromyalgia does not appear on x-rays or MRIs, this does not mean that there are no objective criteria upon which the diagnosis is based.  To the contrary, fibromyalgia is distinguished from "'other diseases of a rheumatic character' [by]  multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at

---

[5]   Nothing in this opinion is meant to preclude plaintiff from presenting evidence that the mental residual functional capacity assessment as found by the State Agency physician is incompatible with the conclusion that plaintiff is capable of non-public, simple, repetitive tasks.

[6]   Although the ALJ did not specifically state that plaintiff was limited to unskilled work, the Medical-Vocational Guidelines cited by the ALJ are specifically premised either on transferability of skills, not relevant here, or to unskilled work.  Section 200.00(b), Appendix 2, Subpart P, 20 C.F.R. Part 404; SSR 85-15.  Simple repetitive work is unskilled work.  See Terry v. Sullivan, 903 F.2d 1273, 1276-77 (9th Cir. 1990); 20 C.F.R. § 416.968(a).

1   least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the
2   patient to flinch." Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001), quoting Sarchet v.
3   Chater, 78 F.3d 305, 306 (7th Cir.1996).  On February 3, 2004, when plaintiff was diagnosed with
4   fibromyalgia, she had five "trigger" points. [AR at 226.]  On February 9, 2004, she had six. [AR at
5   225.]   An evaluation dated February 23, 2004, however, fails to indicate any tenderness except
6   in the lumbar paraspinal region. [AR at 243.]

7        Substantial evidence, therefore, supports the ALJ's finding concerning the diagnosis of
8   fibromyalgia.

9   **D.    THE DIAGNOSIS OF ASTHMA**

10        Plaintiff also contends that the ALJ erred by failing to find a severe impairment of asthma.
11   She lists "multiple references to the diagnosis." Joint Stipulation at 18.    However, these
12   references are mostly history as provided to the Commissioner or to plaintiff's physicians of some
13   type of respiratory impairment.   Only one reference actually referred to an incident of bronchitis.
14   [AR at 174.] Although plaintiff testified to shortness of breath [AR at 268], it is not entirely clear
15   whether this shortness of breath is related to any respiratory impairment or to her anxiety. [Id.]
16   History indicates that she has been prescribed medications such as inhalers [AR at 113, 143], but
17   whether this use is ongoing is also not clear.  [See, e.g., AR at 196, 243.] Plaintiff cites the report
18   of her treating physician indicating environmental restrictions as evidence of a "severe"
19   impairment. [AR at 252.] Inasmuch as any asthmatic may legitimately have prophylactic
20   environmental restrictions, see Lastrape v. Barnhart, 376 F.Supp.2d 704, 714 -15 (E.D. Texas
21   2005), and because the treating physician's assessment was wrongly rejected (see below), upon
22   remand, the ALJ should reevaluate whether there are in fact any limitations due to asthma.

23   **E.    THE TREATING PHYSICIANS' OPINIONS**

24        The opinion of a treating physician is generally entitled to greater weight than the opinions
25   of a physician who has not treated the claimant.  This is so because the treating physician is
26   employed to cure and has a greater opportunity to know and observe the patient than a physician
27   who only saw the claimant on one occasion.  Andrews, 53 F.3d at 1041.  This is not to say,
28   however, that the opinion of even a treating physician is "necessarily conclusive as to either a

8

1  physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751, citing

2  Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989).  If, for example, the opinion of

3  a treating physician is rejected in favor of that of a non-treating physician, and the opinion of the

4  non-treating physician is based upon independent clinical findings, the opinion of the non-treating

5  physician can constitute substantial evidence.  It is then for the ALJ to resolve the conflict.

6  Andrews, 53 F.3d at 1041.  If, on the other hand, the opinion of the non-treating physician is

7  based upon the same clinical findings considered by the treating physician, the ALJ must cite

8  specific and legitimate reasons for rejecting the treating physician's opinion.  Id.

9       Plaintiff contends that the ALJ failed to properly consider the opinions of Payam Kerendian,

10  D.O., Nida Nora Miniano, M.D., and V. Chatsuthiphan, M.D.   Joint Stipulation at 9.  Plaintiff is

11  correct.

12       Dr. Kerendian submitted two questionnaires, both dated January 16, 2004, assessing

13  plaintiff's physical and mental limitations. [AR at 250-52, 253-54.] Both suggest that plaintiff is

14  unable to work.  The ALJ rejected Dr. Kerendian's opinion:

15           The physician at Exhibit 17F[7] responded to the frequently solicited
16           Work Capacity Evaluation provided by claimant's attorney and whose
             opinion was provided through a series of checked boxes resulting in
             the usual finding of "disabled."  However, the opinion has no probative
17           value given the lack of specific clinical and objective findings, is
             inconsistent with the totality of the medical evidence of record and
18           appears based more on the claimant's own subjective complaints
             than any objective criteria.
19

20  [AR at 13-14.]

21       These are not sufficiently specific and legitimate reasons for rejecting the treating

22  physicians' opinions.  First, that the form was solicited by plaintiff's attorney is irrelevant. Reddick

23  v. Chater, 157 F.3d 715, 726 (9th Cir. 1998).  Next, it is unclear what the ALJ meant by "the usual

24  finding of disabled."  If he is implying that treating physicians "'routinely lie in order to help their

25  patients collect disability benefits,'" that is not a specific and legitimate reason.  Lester, 81 F.3d

26  _____

27       [7]   Exhibit 17F covers only Dr. Kerendian's assessment of plaintiff's physical limitations.
     Presumably, the ALJ meant to reject the mental assessment found at Exhibit 18F  [AR at 253-54]
28   as well.

at 832, quoting Ratto v. Secretary, 839 F.Supp. 1415, 1426 (D.Or.1993). If he is implying that it is Dr. Kerendian who always finds his patients disabled, that, too, is not a specific and legitimate reason absent evidence in the record. See Reed v. Massanari, 270 F.3d 838, 844 (9th Cir. 2001) (There was "no material in the record to support the ALJ's conclusion that the medical opinions of both available rheumatologists are unreliable.").

That the form is a check-the-box form can be a specific and legitimate reason for rejecting a physician's opinion when that opinion lacks objective and clinical support. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). In such a case, it can reasonably be presumed that the physician had, in fact, relied primarily upon his patient's properly discounted subjective complaints.[8] Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999). However, as plaintiff notes (Joint Stipulation at 4), inasmuch as the ALJ's decision indicates no discussion whatsoever of Dr. Kerendian's and other treatment notes, this Court cannot conclude that the ALJ's rejection of Dr. Kerendian's opinion is based upon substantial evidence. The ALJ's summary of the evidence consists entirely of the report of the consultative psychiatric evaluation, the form completed by the State Agency psychiatrist, the records from the San Antonio Community Hospital where plaintiff was hospitalized in 2002, the diagnostic studies, which could be interpreted to support,[9] not detract from, Dr. Kerendian's opinions, and Dr. Kerendian's responses to the questionnaire.[10]   [AR at 13-14.] It is the treating physician's opinion that is

---

[8]   There is no challenge to the ALJ's adverse credibility finding.

[9]   As noted by the ALJ, "[t]he record does document degenerative disc disease and clinical studies document electrophysiological evidence of chronic involvement of the cervical nerve roots (Exhibit 15F). Secondary to the complaints of neck pain, the claimant underwent a MRI in May 2004 at which time degenerative disc disease mostly involving C5-6 and C3-4 were found without any evidence of significant spinal stenosis or neural foraminal stenosis (Exhibit 16F)." [AR at 13.]

[10]   In short, the review of the evidence seems to be limited to that which is typewritten or printed. [AR at 196-99, 202-19, 240-41, 247, 250-54.] Although Exhibit 15F cited by the ALJ includes a handwritten report of an initial consultation, which includes findings such as decreased back range of motion, positive tenderness, positive straight leg raising, right knee crepitus, positive joint line tenderness, mild edema, and unsteady heel and toe walking [AR at 243], there is no indication that the ALJ considered anything other than the printed electrodiagnostic studies included as part of that Exhibit. [AR at 13.]

1  entitled to deference, if not controlling weight. 20 C.F.R. § 416.927(d).  But if there is no

2  evaluation of the treatment records, such as a summary of negative findings, the ALJ's finding that

3  Dr. Kerendian's opinion is unsupported and contradicted by the "totality" of the medical evidence

4  is conclusory and without support.

5  Similarly, although this Court does not necessarily agree with plaintiff that a Global

6  Assessment of Functioning score[11] represents an opinion which would result in a finding of

7  disability, Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002)("While a

8  GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to

9  the RFC's accuracy"), or that an opinion of disability expressed on a welfare form is highly

10  probative [see AR at 249], the ALJ's disregard of the psychiatric treatment record[12] likewise

11  /

12  /

13  /

14  /

15  /

16  /

17  /

18

19  [11]   A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the

20  individual's overall level of functioning.  It is rated with respect only to psychological, social, and
occupational functioning, without regard to impairments in functioning due to physical or

21  environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical
Manual of Mental Disorders, p. 32 (4th Ed. 2000) ("DSM-IV").  Dr. Chatsuthiphan assesed a GAF

22  score of 45 [AR at 234], which indicates "[s]erious symptoms (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or

23  school functioning (e.g., no friends, unable to keep a job)." See DSM-IV at 34.

24  [12]   The Commissioner contends, however, that "[a]lthough the ALJ does not identify these

25  records, the references to the rape, nightmares, intrusive thoughts, and decreased sleep are
taken from the San Bernardino mental health notes (AR 236, 238)." Joint Stipulation at 7-8, n.1.

26  While the San Bernardino Mental Health notes do, in fact, recite these complaints, it is more likely
that these references were taken from the consultative examiner's report: "The claimant stated

27  that when she was 15 years of age, she was raped by 11 men.  She states she has nightmares
of this event on a frequent basis.  She also has intrusive thoughts on a daily basis....Her sleep is

28  decreased." [AR at 196.]

requires remand for further consideration of plaintiff's mental impairment, including its effects, if any, upon plaintiff's physical complaints.[13]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further assess the treating physicians' opinions and plaintiff's mental impairments, including their effects, if any, upon plaintiff's physical complaints and his residual functional capacity. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: August 11, 2006                                    _____/S/_____

                                                                   PAUL L. ABRAMS
                                                       UNITED STATES MAGISTRATE JUDGE

---

[13]   A review of the record also suggests that plaintiff's mental impairment may cause or exacerbate plaintiff's physical complaints. [See AR at 175 (" ...[T]he way she deals with her stress is through severe body pain, and she just cannot seem to get herself together to help do what is necessary to go to work."); see also AR at 174 ("generalized neck, back pain most likely secondary to anxiety.")].